D. H. BALDWIN CO. et al.

v.

UNITED STATES.

C.D. 4704; Court Nos. R69/1511, etc.

United States Customs Court.

June 29, 1977.

Barnes, Richardson & Colburn, New York City (Richard C. King, New York City, of counsel), for plaintiff.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C. (David R. Ostheimer, New York City, trial atty.), for defendant.

WATSON, Judge:

This is a dispute over the basis of valuation for tariff purposes of certain electric guitars manufactured by plaintiff's subsidiary in England and exported in 1967 and 1968. The transactions between plaintiff and its subsidiary were the only sales for export to the United States of such or similar merchandise. Plaintiff claims export value,[1] rather than constructed value,[2] should be the basis of appraisement.

■ In circumstances where export sales are made to a selected purchaser rather than to all who wish to buy, the merchandise will nevertheless be considered "freely sold" within the statutory meaning of "export value" if it is sold at a price which "fairly reflects the market value of the merchandise".[3]

Plaintiff tried to prove the prices it paid fairly reflected the market value by showing the prices exceeded the production costs, generated a profit for the subsidiary and resulted from "arms length" negotiations between the two companies.

■ The first line of proof has no bearing on export value. Export value must be determined from the market for export to the United States, not from conditions prevailing in other markets or from makeshift adaptation of other methods of valuation such as constructed value (cost of production). *J. L. Wood v. United States*, C.A.D. 1139, 505 F.2d 1400, 62 CCPA 25, 32 (1974).

■ The lack of a market for export to the United States, other than the transactions in dispute, does not justify turning to markets which have been unequivocally closed to consideration by the opinion in *J.*

1. Section 402(b), Tariff Act of 1930, as amended:

  (b) Export Value.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

2. Section 402(d), Tariff Act of 1930, as amended:

  (d) Constructed Value.—For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

  (1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

  (2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

  (3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

3. Section 402(f)(1), Tariff Act of 1930, as amended:

  (f) Definitions.—For the purposes of this section—

  (1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

  (A) to all purchasers at wholesale, or

  (B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

  without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

L. Wood v. United States, supra, i. e., the home market in the country of exportation and the home country export market to third countries. An exception to the rule expressed in the *J. L. Wood* case cannot be made by this court.

■ Use of the seller's production costs and profit figures is similarly precluded as a basis for determining export value. Not only would this move the determination of export value outside the market for export to the United States; it does not follow that a "profitable" price necessarily means the price reflects the full fair market value of the merchandise.

■ As to plaintiff's second line of proof, I can accept the theoretical possibility of proving that a price fairly reflected the market value solely from the fact that price was arrived at by "arms length" negotiations. *National Carloading Corporation v. United States*, 57 Cust.Ct. 758, 765, A.R.D. 215 (1966); *Spanexico, Inc. v. United States*, 75 Cust.Ct. 123, 133–34, C.D. 4616, 405 F.Supp. 1078, 1086–87 (1975), aff'd, C.A.D. 1176, 542 F.2d 568, 64 CCPA ——. In this instance, however, plaintiff failed to prove the negotiations were at "arms length." For the manager of the manufacturing subsidiary to remain an employee of the importing parent, as was the case here, is inconsistent with the degree of independence which must exist between two companies whose conduct in price negotiations is to serve as the sole justification for concluding the price agreed upon fairly reflects the market value of the merchandise. When we are so far away from classical free market conditions, precluded from an accounting dissection or construction of the price, cut off from reference to sales in markets other than that for export to the United States and when, in that market, we are without resort to sales by other manufacturers or by this manufacturer to other selected purchasers, we are at the outer limits of the area in which it is possible to obtain a "reflection" of the fair market value. In such circumstances, since the source of the substantiation is so limited, it is only reasonable to require that it be

clear; an unmistakable indication that traditional, untrammeled opposing market forces were at work. In this crucial respect plaintiff's proof was deficient.

■ There have been cases in which export value was found to exist despite considerably less than complete managerial separation between the exporter and its related selected purchaser. This was so in the *J. L. Wood* case as well as *Greb Industries, Ltd. v. United States*, 64 Cust.Ct. 608, R.D. 11691, 308 F.Supp. 88 (1970). But in those instances the substantiation of fair market value came from sales to unrelated purchasers, not from the conduct of negotiations between the related companies. Had there been no sales to unrelated purchasers in those cases I venture to say findings of export value would have been problematic. See for example, *Spanexico, Inc. v. United States, supra* at 134–35, 308 F.Supp. 88.

It follows from the above that plaintiff has failed to prove its claimed values and the appraised values must be affirmed.

Judgment will enter accordingly.