JAMES J. BOYLE & CO. A/C NITTO KOHKI U.S.A. INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 77-9-03236

(Dated November 18, 1981)

*Glad, Tuttle & White,* (*Edward N. Glad* at the trial and on the brief) for the plaintiff.

*J. Paul McGrath* Assistant Attorney General; *Joseph Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch (*Susan Cassell* at the trial; *John J. Mahon* on the brief), for the defendant.

WATSON, *Judge:* This action raises the question of what is the proper basis for determining the value for tariff purposes, of certain pneumatic hand-tools. Plaintiff (Nitto Kohki, U.S.A.), a wholly-owned subsidiary of the tools' manufacturer (Nitto Kohki, Japan),

was the sole importer of these items in 1972. Plaintiff contends that Customs erroneously computed the Export Value [1] of the goods in question; using the retail price minus a wholesaler's discount, instead of list prices on invoices supplied by plaintiff's parent company.

The essence of plaintiff's argument in support of calculating Export Value on the basis of the invoice prices, is that it is a selected purchaser at wholesale, who negotiated the invoice prices at arm's-length in a bona fide transaction. This directly contradicts the finding upon appraisal that plaintiff was a selling agent for the parent company, Nitto Kohki, Japan.

There was no contractual agreement between Nitto Kohki, Japan, and the plaintiff, designating it as an "exclusive" or selected purchaser of the merchandise in question. This fact alone militates against an argument that there was such a relationship. *Majestic Electronics, Inc.*, v. *United States*, 84 Cust. Ct. 38, 48, C.D. 4839, 488 F. Supp. 897 (1980). Despite the lack of an agreement, plaintiff points to the absence of any restrictions placed on it by the parent company, in terms of who it could sell to and how it could conduct sales operations in the United States. These facts, viewed in the context of the record as a whole, do not preclude a determination that plaintiff was a sales agent for Nitto Kohki, Japan. It is undisputed that plaintiff imported only pneumatic hand-tools manufactured by Nitto Kohki, Japan. The record further indicates that plaintiff held itself out as a manufacturer of pneumatic hand-tools on its sales circulars. Plaintiff had no manufacturing capabilities in the United States during 1972. Its operations only entailed the warehousing, distribution and sale of tools manufactured by Nitto Kohki, Japan. Thus, the conclusion that plaintiff perceived, and in fact cultivated an impression of itself as an extension of Nitto Kohki, Japan, is amply supported by the record.

More importantly, of the six named directors and executive officers of Nitto Kohki, U.S.A., five held similar or identical positions in the parent corporation during 1972. Only one resided in the United States during 1972.

Therefore, plaintiff's corporate structure and the manner in which it conducted business during the period in question, support the determination that plaintiff was an agent of Nitto Kohki, Japan. *Robert E. Landweer & Co., Inc., a/c Robert Newton & Sons, Inc., et al.* v. *United States*, 63 Cust. Ct. 682, 689, A.R.D. 261 (1969).

---

[1] 19 U.S.C. 1401(b) defines Export Value of imported merchandise as:

* * * the price. at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

Plaintiff's argument that listed invoice prices should be used to determine the export price, because they resulted from arm's length negotiations with Nitto Kohki, Japan is not borne out by the record. The evidence advanced as proof of negotiations consists of two price estimates and a telex [plaintiff's Exhibits 5–7]. Price estimate #P–425 dated January 28, 1972 provides higher prices for all of the merchandise in question, than estimate #P–466 dated February 25, 1972. A telex sent after both price estimates had been received by the plaintiff, reinstates the higher prices listed on price estimate #P–425 as the prices to be paid for the merchandise. However, the record is devoid of evidence that the plaintiff objected in any manner to the higher prices which were reinstated as the "formal quotation" for the tools.

The passive acceptance of the reinstatement of a higher price, *after* a cheaper price has been quoted, together with the absence of any clear indication at any time of what the plaintiff considered to be a fair price for the merchandise in question, flies in the face of any normal concept of negotiation. In light of this, the offer of proof that a different pneumatic tool was offered at the same price to plaintiff and another importer is to be given little weight.

It must also be considered that the officer negotiating prices on behalf of Nitto Kohki, Japan served simultaneously as a director on plaintiff's board. Mr. Shimokogawa, who represented plaintiff in these negotiations, was at the same time an officer of Nitto Kohki, Japan. This "* * * is inconsistent with the degree of independence which must exist between two companies whose conduct in price negotiations is to serve as the sole justification for concluding the price agreed upon fairly reflects the market value of the merchandise." *D.H. Baldwin Co. et al.* v. *United States*, 78 Cust. Ct. 164, 166–7, C.D. 4704, 432 F. Supp. 1351 (1977).

Thus, plaintiff has not proved by a preponderance of the evidence that it was a selected purchaser who negotiated at armslength the invoice prices supplied by Nitto Kohki, Japan.

Plaintiff's alternative argument that United States Value is the proper basis for determining the value of the merchandise for tariff purposes, is deficient in one important respect.

Plaintiff does not address the issue of whether an Export Value as defined by 19 U.S.C. § 1401(c)[2] exists or not. It is well settled that in

---

[2] 19 U.S.C. 1401(c) in pertinent part provides:

*United States Value*

(c) For the purposes of this section, the United States value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal market of the United States for domestic consumption, packed ready for delivery, in the usual wholesale quantities and in the ordinary course of trade, with allowances made for—

    *       *       *       *       *       *       *

order to prove United States Value, the existence of an Export Value for such or similar merchandise must be negated. *Glenside Steel Company et al.* v. *United States*, 71 Cust. Ct. 23, 32, C.D. 4466, 364 F. Supp. 1398 (1973), *aff'd* 62 CCPA 1, C.A.D. 1133, 503 F. 2d 563 (1974).

Plaintiff contends that the normal course of dealing in the trade of importing pneumatic hand-tools was for a selected purchaser's relationship to exist between Japanese manufacturers and American importers the implication being that an Export Value could not be determined, because these relationships prevented plaintiff from ascertaining the prices at which the merchandise was offered for sale in Japan.

However, the testimony of plaintiff's own witnesses argues against such a conclusion. Mr. Oka who during the period in question was directing marketing and sales in the North Central States for plaintiff, testified that one American company imported from three Japanese manufacturers at the same time. Mr. Tomishima, at the time, an Assistant Export Manager for the plaintiff, gave contradictory testimony as to whether Japanese manufacturers of pneumatic tools dealt only with selected purchasers.

The weight of the testimony, then, does not support an inference that the Export Value of the merchandise could not be determined because of selected purchaser relationships between Japanese manufacturers and American importers. It follows that the presumption of correctness, which attaches to the finding that the merchandise had an Export Value, must stand. 28 U.S.C. § 2635(a).[3]

For reasons discussed above, the appraised values are affirmed. Judgment to enter accordingly.

---

[3] 28 U.S.C. § 2635 states the rule that:

*Burden of proof; evidence of value*

In any matter in the [Court of International Trade]:
 (a) The decision of the Secretary of the Treasury, or his delegate, is presumed to be correct. The burden to prove otherwise shall rest upon the party challenging a decision.